657 So.2d 1353 (1995)
Arthur L. ROSENKRANTZ
v.
BATON ROUGE PSYCHOLOGICAL ASSOCIATES, Darlyne Gaynor Nemeth, Cary D. Rostow, and Joseph G. Delatte, Jr.
No. 94 CA 2340.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
Rehearing Denied August 17, 1995.
J. Peyton Parker, Jr., Baton Rouge, for plaintiff-appellee Arthur L. Rosenkrantz.
Thomas H. Benton, Baton Rouge, for defendants-appellants Darlyne G. Nemeth and Cary Rostow.
Before WATKINS and FOGG, JJ., and TANNER,[1] J. Pro Tem.
WATKINS, Judge.
This suit involves the departure of the plaintiff, Mr. Arthur L. Rosenkrantz, from the partnership of Nemeth, Rostow and Rosenkrantz (Partnership) and the purchase by the remaining partners of his interest in the Partnership.
*1354 The Partnership was created on December 26, 1984, for the purpose of building an office facility in which the partners could practice their profession as clinical psychologists. The construction of the building was financed through industrial bonds which required a lease to guarantee the use of the building for its stated purpose. To this end a tenants' organization, the Baton Rouge Psychological Associates (Associates), was created that included the partners and several other associates practicing in the field of psychology. The Associates executed a lease with the Partnership in conformity with the bond requirements and became tenants of the building. The plaintiff practiced with the Associates until the early part of 1992 when he decided to move his practice to New Orleans. Negotiations began between the plaintiff and the remaining partners, Darlyne Nemeth and Cary Rostow, for the purchase of the plaintiff's 20 percent share of the Partnership. The only asset of the Partnership was the building.
The plaintiff filed the instant suit on August 13, 1992, to establish the value of the real estate owned by the Partnership; to establish the value of the leasehold interest held by the Partnership; for reimbursement to plaintiff for rental monies not transferred to the Partnership account; for expenses paid by the Partnership that should have been paid by the lessees in accordance with the lease agreement, and for general damages for alleged breaches of fiduciary duties.[2] Defendants filed a reconventional demand for specific performance of the Partnership Agreement with regard to the completion of the arbitration process for valuation of Partnership property. Defendants further sought attorney's fees and costs pursuant to the Partnership Agreement.
After a two day bench trial held on July 27 and 28, 1993, the court determined the value of the property to be $402,000.00 and awarded the plaintiff his 20% interest in that amount. The court dismissed the plaintiff's claim for violation of fiduciary obligations and accepted the defendants' final accounting. A judgment to that effect was executed on November 2, 1993. On that same date plaintiff filed a motion for a partial new trial alleging that the judgment was contrary to the law and evidence because it failed to award the plaintiff any interest in the lease between the Partnership and the Associates. Thereafter, the defendants filed a motion to amend the November 2, 1993 judgment, to correct omissions. The court granted the motion to amend and signed an amended judgment on November 12, 1993.
Plaintiff's motion for new trial was heard on April 25, 1994. The court permitted the testimony of Mr. John LeJeune regarding the value of the lease. The court granted the motion and awarded the plaintiff $30,000.00 to compensate him for the lease revenues he would have received as a partner. An amended judgment to that effect was signed on May 4, 1994. The defendants, thereafter, filed a motion to amend the judgment and a motion for new trial. The trial court denied both motions.
The defendants appealed alleging that: (1) the trial court erred in refusing to require arbitration to value the immovable assets pursuant to the provisions of the Articles of Partnership, and (2) the trial court abused its discretion by granting a partial motion for new trial. Plaintiff answered the appeal alleging that: (1) the trial court erred in failing to award the plaintiff $44,471.80 for the misapplication of partnership funds, and (2) the trial court erred in failing to award general damages for breach of the defendants' fiduciary obligations to the plaintiff.

ARBITRATION
The defendants argue in this assignment of error that the agreement between the parties is a binding arbitration agreement and plaintiff's failure to follow the arbitration procedures set forth in the agreement forecloses *1355 him from recovering in this lawsuit. They contend that instead, the filing of this lawsuit prior to completion of the appraisal process voided the process, making the first appraisal final and binding. The plaintiff gave formal notice of his termination from the partnership effective May 1, 1992, and the defendants exercised their right to purchase the interest of the plaintiff and gave notice of that fact under the terms of Article VIII of the Articles of Partnership, which provides:
2. The purchase price for any Departing Partner's interest in the Partnership shall be determined as follows: The property shall be appraised on the basis of the then current market value by a competent appraiser selected by the Partnership. The Departing Partner ... shall have the right to retain an appraiser who is qualified to appraise the Property at his expense. If there is a difference between the two appraised values and if the two appraisers cannot reach an agreement as to a mutually agreed fair market value for the Property, then the two appraisers shall select a third appraiser whose expense shall be equally shared by the Partnership and the Departing Partner.... The conclusion of said third appraiser as to the fair market value of the Property shall be binding and final on all of the parties for purposes hereof. The appraiser selected by the Partnership shall render his opinion within ninety (90) days after the effective date of withdrawal of the Departing Partner from the Association. If an appraiser is selected by the Departing Partner ... then said appraiser shall render his report within thirty (30) days after receipt by the Departing Partner or the legal representative of the appraisal report prepared by the appraiser selected by the Partnership. If the opinion of a third appraiser is necessary, then said appraiser shall be selected and shall render his opinion within thirty (30) days following his delivery of the report to this Partnership by the Departing Partner or the legal representative as the case may be.
In accordance with the agreement, the Partnership selected Mr. William F. Cobb, a qualified real estate appraiser, to appraise the current market value of the property. Plaintiff made no objection to the selection of Mr. Cobb. On May 27, 1992, Mr. Cobb appraised the property at $285,000.00, which was $103,805 less than the outstanding balance on the original loan. The defendants offered the plaintiff a settlement based on the remaining balance of the loan which the plaintiff refused. Instead, the plaintiff hired Mr. Jack Evans to appraise the property. Mr. Evans failed to timely perform the appraisal, and by mutual agreement the parties extended the time limit to allow the plaintiff to hire Mr. John LeJeune to appraise the property. Prior to the completion of Mr. LeJeune's appraisal, the plaintiff filed the instant suit. The trial court made the following findings with regard to the appraisal of the property:
There exists ... conflicting appraisals with respect to the primary partnership asset, the office building. The initial appraisal, performed by William F. Cobb, valued the building at $285,000. The second appraisal, conducted by John LeJeune, indicated a value of $402,000. Under the terms of the partnership agreement, a third appraiser was to be appointed, whose estimate was to be controlling. A third appraisal was never commissioned.
The court feels that Mr. Cobb's appraisal, which adjusted the total value of the building by application of the "market obsolescence" theory, is not accurate. The more reasonable and realistic appraisal is that of Mr. LeJeune which reflected that the building is worth $402,000. Because the parties failed to appoint a third appraiser, the court believes that Mr. LeJeune's valuation of the building should have been used in the accounting of partnership assets.
We do not believe that the provisions of the Articles of Partnership, quoted above, amount to a binding arbitration agreement *1356 as contemplated in LSA-R.S. 9:4201.[3] However, it is axiomatic that agreements legally entered into have the effect of law upon the parties thereto, and courts are bound to give legal effect to these agreements according to the true intent of the parties, as generally determined by the words of the contract when these are clear and specific. Hood v. Ashby Partnership, 446 So.2d 1347 (La.App. 1st Cir.1984). The agreement herein is in the nature of a contract to purchase, with the price to be determined in the future by third persons.
Where the price of a sale is to be determined and fixed in the future by experts to be named by the parties, as here, and any party has the power to refuse to appoint the courts have considered the provision uncertain and unenforceable. See Lake v. Le Jeune, 226 La. 48, 74 So.2d 899 (1954).[4] Accordingly, we find the provisions of this agreement for determining the price to be uncertain and unenforceable under the circumstances of this case. Therefore, the trial court did not err in continuing the appraisal process, nor did it abuse its discretion in choosing which appraisal to apply.

MOTION FOR NEW TRIAL
The defendants contend that the trial court erred in granting the plaintiff's request for a new trial and awarding an additional $30,000.00 for the plaintiff's interest in the lease. Defendants argue that the partnership agreement provided that the departing partner be compensated for the "current market value" of the property only. Alternatively, the defendants contend that the trial court abused its discretion in awarding the plaintiff a new trial.
In the original trial of this matter the plaintiff's expert appraiser, Mr. LeJeune, testified that he considered the $80,000.00 annual lease of the subject property to be highly unusual, speculative, and substantially above the market rates for comparable rental properties. According to his calculations, $32,500.00 per year of the lease should be considered "excess rent." However, when asked by plaintiff's counsel to calculate the net value of the remaining 2.3 years of the lease, Mr. LeJeune used the $80,000.00 figure and concluded that the present value of "the right to receive $80,000.00 a year ... for 2.3 years discounted back to today at 9 percent... is $150,797.58." No further testimony was elicited in the original trial with regard to the value of the plaintiff's interest in the lease.
Mr. LeJeune subsequently testified during the hearing on the plaintiff's motion for new trial; he was asked to give the present day value of the excess rent of $32,500.00 for 42 months.[5] He concluded that the present value of this right was $21,734.00. Based upon this testimony the trial court granted the plaintiff's motion for new trial stating the following reasons:
Considering Mr. LeJeune's clarification of his earlier testimony, the court will grant additional damages to Dr. Rosenkrantz against the defendants.
Apart and aside from the value of the actual building as appraised by Mr. LeJeune, taking into account a reasonable rental based on current market prices, the *1357 lease of the building to the associates would have produced revenue for Dr. Rosenkrantz.... This "excess" lease value was estimated to be $32,500.00 annually. Mr. LeJeune testified that the present day value of this excess lease, based on the remaining term of the lease, was just over $150,000.00. The court will award 20% (Dr. Rosenkrantz's partnership interest) of $150,000.00 to the plaintiff or $30,000.00 to compensate him for lease revenues he would have received as a partner.
Louisiana Civil Code of Procedure Article 1972 provides that:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
A new trial may also be granted in any case if there is good ground therefor. LSA-C.C.P. art. 1973. The law is clear that the granting or denying of a motion for new trial rests within the wide discretion of the trial court and its determination shall not be disturbed absent an abuse of that discretion. Engolia v. Allain, 625 So.2d 723 (La.App. 1st Cir.1993).
It is apparent from the record of the original trial that the plaintiff failed to clearly establish what, if any, interest he owned in the lease. Thereafter, granting the plaintiff a new trial to allow him to introduce new testimony that was clearly available during the original trial of this matter was an abuse of the trial court's discretion. Although the trial court stated that Mr. LeJeune's testimony at the hearing on the motion for new trial merely clarified his earlier testimony, we do not find this to be correct. A correct decision cannot be made in this case without the testimony elicited at the hearing; therefore, the trial court's award is not supported by the evidence elicited during the original trial. In its written reasons, the trial court acknowledged that the excess rent was $32,000.00 per year; however, it based its award to the plaintiff upon the full $80,000.00 rent, despite the fact that $47,500.00 of that amount had already been considered in the appraisal of the building. It was only at the hearing for a new trial that the plaintiff established the correct value of the lease. Accordingly, we will reverse the trial court judgment for additional lease revenues.

MISAPPLICATION OF PARTNERSHIP FUNDS
Plaintiff alleges on appeal that the trial court erred in failing to award him $44,471.80 for the misapplication of partnership funds by the managing partners, and in failing to award general damages for breach of the defendants' fiduciary obligations. The trial court made the following findings concerning these claims:
As to Dr. Rosenkrantz's demand for an accounting and reimbursement, the court feels that the defendants are legally obligated to fully account for all partnership debts and assets and make to the plaintiff the appropriate reimbursement. This accounting and reimbursement has already been substantially completed with one exception. The court is not convinced, as the plaintiff argued at trial and in his pleadings, that the defendants either failed to collect or wrongfully disbursed any monies.
. . . . .
As to the remainder of the plaintiff's claims, the court does not find that Dr. Rosenkrantz has met his burden of proving either a breach of lease or a breach of any fiduciary duty owed by the defendants. The plaintiff has demonstrated no conduct on the part of the defendants which violates any legal or contractual duties owed to the plaintiff and which was contrary to Dr. Rosenkrantz's interests.
Even if the defendants had breached their fiduciary duties, as partners, to the *1358 plaintiff, there would be no grounds for recovery. The court is convinced by the testimony of Randall Plaisance, C.P.A., that the plaintiff suffered no net loss by the way monies and rents were collected and disbursed by the defendants. Therefore, the plaintiff is not entitled to damages for breach of fiduciary duties or breach of lease, which lease existed between the partnership and the various associates who occupied the building[.]
On appellate review, the trial court's factual findings are entitled to great weight and will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Our review of the record reveals that the trial court's finding that the defendants did not breach any fiduciary duties to the plaintiff is reasonably supported by credible evidence, and we will not disturb it.
For the reasons stated herein, we reverse that portion of the trial court judgment granting the plaintiff a new trial and awarding plaintiff an additional $30,000.00 for his interest in the lease. The judgment is affirmed in all other respects. Costs of this appeal are assessed at 50 percent to the plaintiff and 50 percent to the defendants.
REVERSED IN PART; AFFIRMED IN PART AND RENDERED.
FOGG, J., concurs in the result.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] Plaintiff originally filed suit against Baton Rouge Psychological Associates, Dr. Darlyne Nemeth, Dr. Cary D. Rostow, and Dr. Joseph Delatte, Jr. However, the plaintiff voluntarily dismissed his suit against the Associates and Dr. Delatte.
[3] LSA-R.S. 9:4201 provides:

A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
[4] We note the recent addition of LSA-C.C. art. 2465 in the articles on sale which provides that "[t]he price may be left to the determination of a third person. If the parties fail to agree on or to appoint such a person, or if the one appointed is unable or unwilling to make a determination, the price may be determined by the court."
[5] It is not apparent from the record why Mr. LeJeune used 2.3 years as the remaining life of the lease during the original trial and changed it to 42 months during the hearing on the new trial.